# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 08-CR-2026-CJW-MAR |
| vs. | |
| MICHAEL D. SAMPSON, JR., | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court on defendant's Motion for Compassionate Release filed on June 30, 2020. (Docs. 108, 109, 110). On July 6, 2020, the government timely filed a resistance. (Doc. 111). On July 13, 2020, defendant timely filed a reply. (Doc. 112). For the following reasons, the Court **denies** defendant's motion.

## II. RELEVANT BACKGROUND

On February 3, 2008, defendant sent two emails from his jr54racer@aol.com account to unidentified recipients. (Doc. 66, at 7). Both emails included the same attachment named 11Best.mp3, which contained a 16-second video of an adult male having sexual intercourse with his prepubescent daughter between the ages of four and six. (*Id.*). The video was from a known series of child pornography. (*Id.*). Defendant's emails were intercepted and reported by America Online ("AOL"). (*Id.*). On March 25, 2008, officers executed a search warrant at defendant's residence and discovered several desktop computers, laptop computers, and computer towers, as well as a disposable camera, CDs, floppy disks, and cassettes, some of which contained pornography. (*Id.*, at 8). Officers also seized a 12-gauge shotgun. (*Id.*). On March 25

and May 13, 2008, officers interviewed defendant. (*Id.*). Defendant admitted he owned the email jr54racer but denied that he uploaded the 11Best.mp3 video to AOL.[1] (*Id.*). He admitted only to receiving the video, watching it, and then deleting it. (*Id.*). Defendant also admitted to sending images to a woman in Missouri, C.M., via Yahoo! Photos and searching for "teen porn" on LimeWire. (*Id.*). Officers later interviewed C.M. and found that one of the images defendant sent her was child pornography involving a prepubescent female. (*Id.*). Officers ultimately found a total of 889 images of bestiality and/or bondage and 29 images of child pornography on defendant's computer.[2] (*Id.*, at 9). Of the latter, nine images depicted prepubescent children. (*Id.*). All 29 images of child pornography were uploaded to defendant's Yahoo! Photos account. (*Id.*).

On October 21, 2008, a grand jury issued an Indictment charging defendant with two counts of interstate transportation of child pornography in violation of Title 18, United States Code, Sections 2252A(a)(1) and 2252A(b)(1) ("Count 1 and Count 2"), one count of possession of child pornography in violation of the same sections ("Count 3"), and one count of possession of a firearm by a felon in violation of Section 924(d)(1) and Title 28, United States Code, Section 2461(c) ("Count 4"). (Doc. 1). On October 22, 2008, officers arrested defendant. (Doc. 12). On October 23, 2008, defendant

---

[1] Defendant's continued denial that he possessed or transported the 11Best.mp3 file appears to be based on the fact that the file was saved as 48607.10741.1789_1.mpg and 48607.10590.8823_1.mpg on his computer. (Doc. 66, at 7). Both files on his computer, however, contained the same video which itself was originally titled 11Best.mp3 or 11best.mpg. (*Id.*).

[2] Defendant notes that "several hundred more images of child pornography" were found on his devices. (Doc. 109, at 15). Although the PSR is somewhat unclear, it appears only 29 of the 889 images found contained child pornography. (Doc. 66, at 9).

2

pleaded not guilty and was detained. (Doc. 8). On January 13, 2009, defendant changed his plea to guilty on Counts 2 and 4 pursuant to a plea agreement with the government. (Docs. 44 & 44–1). On January 28, 2009, the Court accepted defendant's plea. (Doc. 46). On May 11, 2009, defendant moved to withdraw his guilty plea. (Doc. 52). On May 22, 2009, the Court held a hearing on defendant's motion. (Doc. 58).[3] On June 29, 2009, the Court denied defendant's motion. (Doc. 68).

On June 22, 2009, the United States Probation Office filed defendant's PSR. (Doc. 66). Defendant was, at that time, 37 years old. (*Id.*, at 2). Defendant described his childhood as good, noting that his parents were close and loving. (*Id.*, at 37). He graduated high school. (*Id.*, at 42). Defendant had a consistent but highly episodic employment history in mechanics and transportation. (*Id.*, at 43–44). Defendant had a teenage daughter from a prior relationship whom he had not seen in seven years. (*Id.*, at 38). Defendant had a 14-year-old daughter and six-year-old son from his current relationship. (*Id.*). His girlfriend also had two teenage daughters, an eight-year-old daughter, and a three-year-old son from a prior relationship. (*Id.*). Defendant reported that his girlfriend's ex-boyfriend sexually abused three of the girls in the past. (*Id.*).

Defendant's criminal history began at age 31 with a burglary conviction for kicking in the door to his ex-girlfriend's house, demanding the return of his daughter, and hitting his ex-girlfriend. (*Id.*, at 36). That same year, defendant was convicted of indecent

---

[3] At that hearing, defendant asserted actual innocence. (Doc. 62, at 4). He testified that, after receiving the draft presentence investigation report ("PSR"), he "found out some information that [he] did not know" when he pleaded guilty. (*Id.*). Defendant claimed he had never heard of the 11Best.mp3 video, he was not on the computer when it was sent, and he had not sent all the pictures alleged to C.M. (*Id.*, at 4–6). He argued sharing child pornography with C.M. over the internet was not transportation but was instead "like open[ing] a book and show[ing] somebody" pornography. (*Id.*, at 10). He claimed he obtained CDs from a repossessed truck and kept them because they could be reused but disposed of several of them once he found they contained child pornography. (*Id.*, at 8). He also testified that he pleaded guilty to the firearm offense "[b]ecause it was included [i]n the plea agreement." (*Id.*, at 7).

solicitation of a minor. (*Id.*, at 36). There, defendant used the screenname jr54racer to talk in a roleplaying chatroom with an undercover officer identifying as a 15-year-old girl. Defendant agreed to drive from Iowa to Missouri to meet and have sex with the purported 15-year old. (*Id.*, at 37). Defendant was arrested upon arriving at the agreed-upon location. (*Id.*). Defendant spent two months in jail for this offense. (*Id.*, at 36).

Defendant suffered from deep vein thrombosis ("DVT") in both legs and pulmonary embolism ("PE") "which reduce[d] his oxygen capacity." (*Id.*, at 38). He was also treated for shortness of breath related to his PE. (*Id.*). Although defendant reported no mental health concerns, he received a sex offender evaluation in 2005 and a psychosexual evaluation in 2007. (*Id.*, at 39). These reports noted some depression and some of defendant's sexual history. (*Id.*). Defendant reported that he first had sexual contact when he was in his early teens with a female of the same age. (*Id.*). He reported he also had encounters with females six or seven years older than he was. (*Id.*). He reported having an approximate total of 25 sexual partners throughout his life. (*Id.*). Defendant acknowledged his prior solicitation of a minor but felt that he "got screwed" and should not have been convicted of any crime. (*Id.*, at 39–40). Defendant described his solicitation of sexual partners on the internet as a "buffer" to avoid being hurt and described how persons identifying themselves as minors would send pictures to him through chatrooms. (*Id.*, at 41). The report concluded defendant had a sexual interest in both adolescent and adult females and doubted the veracity of some of his interview answers. (*Id.*, at 40). The report found he was a moderate risk to reoffend but that he "fail[ed] to appreciate the wrongfulness of his conduct and how his actions are inappropriate behaviors." (*Id.*). Another report concluded defendant did not take "accountability for his problems" and was not "amenable to treatment" due to a lack of introspection. (*Id.*, at 42).

On July 24, 2009, the Court sentenced defendant. (Doc. 76).[4] Defendant was in criminal history category II with a total offense level of 35, yielding an advisory guideline range of imprisonment of 188 to 235 months followed by five years to life on supervised release on Count 2 and, given the mandatory minimum sentence, 120 months' imprisonment followed by two to three years on supervised release on Count 4. (Doc. 66, at 46). The Court sentenced defendant to 188 months' imprisonment on Count 2 and 120 months' imprisonment on Count 4 to be served concurrently followed by twenty years' supervised release on Count 2 and three years' supervised release on Count 4 to be served concurrently. (Doc. 77). On August 3, 2009, defendant timely appealed his sentence. (Doc. 79). On May 26, 2010, the Eighth Circuit Court of Appeals affirmed. (Doc. 95). Defendant is currently incarcerated at FCI Butner Low with a projected release date of February 27, 2022. (Doc. 109, at 2).

### III. COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

(i) extraordinary and compelling reasons warrant such a reduction; or

---

[4] At sentencing, defendant again argued he did not send the 11Best.mp3 video. (Doc. 84, at 17). He also suggested his email may have been hacked. (*Id.*).

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [Bureau of Prisons] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The starting point in determining what constitutes "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i) is the United States Sentencing Guidelines section discussing compassionate release. *See* USSG §1B1.13; *see also United States v. Rivernider*, No. CR10-222, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019). USSG Section 1B1.13 provides extraordinary and compelling reasons exist when the defendant is (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physically or mentally deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, experiencing serious deterioration due to age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; (5) some other extraordinary and compelling reason as determined by the Director of the Bureau of Prisons ("BOP").

Courts are split on whether the policy statement is binding because it predates the First Step Act of 2018's changes to Section 3582(c)(1)(A). *Compare United States v. Lynn*, No. CR89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019), *with United*

*States v. Urkevich*, No. CR03-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019). This Court has concluded USSG Section 1B1.13, although it is a helpful guidepost, does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See United States v. Burnside*, No. 6:18-CR-2068-CJW-MAR, 2020 WL 3443944, at *3–4 (N.D. Iowa June 18, 2020) (compiling cases).

### IV. DISCUSSION

#### A. *Exhaustion of Administrative Remedies*

Section 3582(c)(1)(A) states a court may reduce a term of imprisonment after the defendant exhausts all administrative remedies within the BOP or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" This Court has held that defendants are not required to administratively appeal a warden's denial and may fulfill the exhaustion requirement of Section 3582(c)(1)(A) by waiting 30 days from the date the warden receives their request before filing a motion in the courts. *See Burnside*, 2020 WL 3443944, at *4–7.

On April 8, 2020, defendant submitted a request for release to the warden of his facility. (Doc. 109–1, at 1). On April 15, 2020, the warden denied his request. (*Id.*, at 2). Because 30 days have elapsed since defendant submitted his request to the warden, the Court finds he has fulfilled the exhaustion requirement of Section 3582(c)(1)(A).

#### B. *Extraordinary and Compelling Reason*

Defendant argues an extraordinary and compelling reason for release is present because his medical conditions put him at a high risk of severe complications and death if exposed to COVID-19. (Doc. 109, at 10–15). Defendant cites his obesity, DVT, sleep apnea, and histories of asthma and PE. (*Id.*, at 10). Notably, defendant contracted COVID-19 in early June 2020 but had no symptoms other than briefly losing his sense of taste and smell. (*Id.*, at 11). Defendant is incarcerated at FCI Butner Low, which is currently one of the hardest stricken BOP facilities with more than 400 positive cases

7

among the inmate population, one positive cases among the staff, sixteen inmate deaths, and one staff death. *COVID-19*, BOP, https://www.bop.gov/coronavirus/. Including the 244 inmates now recovered, more than half of FCI Butner Low's inmates have contracted COVID-19. *Id.*

The presence of COVID-19 at a defendant's specific facility or within the BOP generally can constitute an extraordinary and compelling reason for compassionate release if the defendant is particularly susceptible to COVID-19 due to their age or underlying health conditions. *See Burnside*, 2020 WL 3443944, at *7 (compiling cases); *see also People Who are at Increased Risk for Severe Illness*, CDC, https://www.cdc.-gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html.

Defendant is 49 years old. (Doc. 66, at 2). His last recorded body mass index ("BMI") of 41.5 in December 2019 puts him in the CDC's risk category for obese persons with a BMI in excess of 30. (Doc. 109–1, at 21). Notably, defendant's weight was trending downward at that time. (*Id.*, at 23, 77) (noting reduced BMI and weight loss over recent months). He continues to suffer from DVT for which he receives medication. *See, e.g.*, (*Id.*, at 5). As a result of his sleep apnea, he uses a CPAP machine when he sleeps, which he "tolerat[es] well." (*Id.*, at 18). The record notes he is prescribed an inhaler as needed for his asthma as well as a nasal spray. *See, e.g.*, (*Id.*, at 18, 22). He also takes medication for his PE. (*Id.*, at 76). Records indicate defendant does not suffer from any shortness of breath, that his respiration is within normal limits, and that his lungs sound clear. (*Id.*, at 7, 12, 19–20, 29, 32, 70, 73, 89, 90, 97). Thus, although defendant has some circulatory and respiratory issues, they do not appear to be particularly serious.

This Court and other courts have denied compassionate release when the defendant had only an asymptomatic or minor case of COVID-19 with no indication that the defendant's health will deteriorate in the future. *United States v. Seeman*, No. 18-CR-

8

Case 6:08-cr-02026-CJW-MAR   Document 113   Filed 07/22/20   Page 8 of 11

101-CJW-MAR-1, (N.D. Iowa July 21, 2020) (Doc. 60, at 9–10) ("Even when he had COVID-19, defendant experienced little more than a dry cough and some fatigue. . . . [T]he Court has little reason to believe his illness would be significantly greater than it was the first time."); *United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020) (denying release in part because the defendant was asymptomatic during his bout of COVID-19); *United States v. Eddings*, No. 2:09-cr-00074-JAM-AC, 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020) (denying release because the defendant suffered no complications from COVID-19 despite his asthma, hypertension, and obesity); *see also United States v. Rachal*, No. 16-10043-NMG, 2020 WL 3545473, at *2 (D. Mass. June 30, 2020) (granting release despite the fact that the defendant was currently positive for COVID-19 due to the possibility that his condition may worsen rapidly in the future). Here, although defendant has some health conditions which elevate his risk during the pandemic, he suffered very minor complications from COVID-19. The Court has no reason to believe he would suffer significantly more severe complications if he were to become infected again. Thus, although defendant has some elevated risk and is incarcerated at a facility with a high exposure rate, the record shows his overall risk of severe complications is low.

Thus, the Court finds defendant has not presented an extraordinary and compelling reason for release and **denies** his motion on this basis. In the alternative, the Court will independently discuss the Section 3553(a) factors as if defendant had presented an extraordinary and compelling reason for release.

### C. *Section 3553(a) Factors and Danger to Community*

Defendant argues the Section 3553(a) factors favor release. (Doc. 109, at 15–16). Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Section 3582(c)(1)(A) requires a court to consider

9

the factors set forth in Title 18, United States Code, Section 3553(a) before granting compassionate release. Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range as set by the USSG; (5) any pertinent policy by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims.

Defendant's underlying offense is serious. He sent a video and images of child pornography over the internet. He possessed other images of child pornography as well. The video and many of the images involved prepubescent children. He actively searched for and shared these images. He consistently denied that he sent the video at issue despite evidence to the contrary. He also consistently denied that he transported child pornography, arguing that uploading and sharing the photos did not qualify as transportation. Defendant's repeated denials are consistent with his psychological evaluations which indicated he failed to appreciate the wrongfulness of his actions. His denials at the time of sentencing are also consistent with his failure to accept responsibility for his prior solicitation of a child offense.

The Court acknowledges that defendant has taken some classes, held employment, and had no significant disciplinary issues while incarcerated. (Doc. 109–1, at 131–34). Defendant has also served nearly 85 percent of his sentence. (Doc. 109, at 16). The aggravating facts of his underlying offense and his prior failures to accept responsibility, however, outweigh these mitigating facts. This is particularly true when defendant

requests the Court release him to a home directly across from a playground where children would likely be present on a frequent basis.[5] (Doc. 110).

Thus, the Court finds, on balance, that the 3553(a) factors do not warrant release and **denies** defendant's motion on this basis.

## V. CONCLUSION

Defendant has failed to identify an extraordinary and compelling reason for release or show that the 3553(a) factors favor release. Thus, for the reasons discussed above, defendant's Motion for Compassionate Release is **denied**. (Doc. 108). Defendant must serve the remainder of his term of incarceration as previously directed. (Doc. 77).

**IT IS SO ORDERED** this 22nd day of July, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[5] The playground at issue, Fullerton Park in Evansdale, Iowa, is a small, triangular plot of land in a residential neighborhood with playground equipment on a woodchip bed in the center. *Fullerton Park*, City of Evansdale, https://evansdale.govoffice.com-/index.asp?SEC=C7C735-03-225C-4C26-881E-57683BFF8EBE&Type=GALLERY. Whether defendant's residence near this park is barred under Iowa law or not (Doc. 110), placing him there presents an obvious risk of repeated criminal conduct.